328 So.2d 538 (1976)
Tarralene BURROUGHS and Charles Burroughs, Her Husband, Appellants,
v.
BOARD OF TRUSTEES OF ALACHUA GENERAL HOSPITAL and Herbert Wagemaker, M.D., Appellees.
Dottie HARMON, a Minor, by Her Parents, Roger Harmon and Doris Harmon, et al., Appellants,
v.
Grace E. WILLARD et al., Appellees.
Nos. Z-285, Z-437.
District Court of Appeal of Florida, First District.
March 11, 1976.
*539 John F. Roscow, III, of Scruggs, Carmichael, Long, Tomlinson, Roscow, Pridgeon, Langdon & Helpling, Gainesville, and Joe *540 C. Miller, II, of Miller, Perry, & Miller, Palatka, for appellants.
William M. Howell, and Robert O. Wilhelm, of Howell, Kirby, Montgomery, D'Aiuto & Dean, Jacksonville, and William C. O'Neal, of Chandler, O'Neal, Avera, Gray, Lang & Stripling, Gainesville, for appellees.
SMITH, Judge.
Plaintiffs appeal from summary judgments entered for defendants, the trustees of Alachua General Hospital and Dr. Wagemaker. Plaintiffs' claims are that, as a result of defendants' negligence, plaintiffs Tarralene Burroughs and Dottie Harmon were injured in February 1973, when the automobiles they occupied were struck by one driven by a patient of the defendants. The patient, who suffered from depression associated with alcoholism, had voluntarily placed herself in the hospital and in Dr. Wagemaker's care under the terms of The Florida Mental Health Act, also known as The Baker Act. Ch. 71-131, Fla.Laws; § 394.451, et seq., F.S. 1971. Defendants allegedly were negligent in permitting the patient to leave the hospital on a day pass when they knew or should have known that she would attempt to operate an automobile under the influence of alcohol or prescribed medication and that she could not safely do so. The sufficiency of the allegations of negligence and causation are not before us. We therefore assume but do not decide that the complaints stated causes of action.
The 1971 Baker Act was a compendium of rights of persons confined for the treatment of mental illness. It recognized their rights to individual dignity, to quality treatment, to communicate and visit with persons outside the facility, to possess personal effects, to vote, to be educated if a child, to confidentiality of treatment, to the benefits of habeas corpus and to Statepaid transportation on court order, if necessary for treatment. As originally enacted and at the time these plaintiffs were injured, § 394.459, subsection (12), F.S. 1971, provided:
"(12) Liability for violations.  Any person who violates or abuses any rights or privileges of patients provided by this act shall be liable for damages as determined by law. A physician, law enforcement officer, attorney, health officer, or hospital officer or employee, whether employed by a private hospital or at facilities operated by the state, a political subdivision of the state, or a hospital authority, who acts in good faith in compliance with the provisions of this part, shall be immune from civil or criminal liability for his actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility."
Upon undisputed proof that the patient had been admitted to the hospital and treated by Dr. Wagemaker under The Baker Act, the circuit court held as a matter of law that, absent allegations of "bad faith" on the part of the defendants, the quoted statute immunized them from civil liability for their allegedly negligent acts and omissions.
In the legislative session following enactment of The Baker Act, the 1973 Legislature renumbered subsection (12) and amended it to read as it now does:
"(13). Liability for violations.  Any person who violates or abuses any rights or privileges of patients provided by this act shall be liable for damages as determined by law. Any person who acts in good faith in compliance with the provisions of this part shall be immune from civil or criminal liability for his actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility. However, this section shall not relieve any person from liability if such person is guilty of negligence." [emphasis added]. ch. 73-133, § 3, Fla.Laws; § 394.459, F.S. 1973.
*541 The 1973 Act unambiguously took away an immunity which the 1971 Act granted. We cannot adopt plaintiffs' argument that the 1973 Legislature merely sought to clarify what it considered to be the existing effect of the 1971 legislation, and so made certain that which was previously doubtful. See State ex rel. Szabo Food Services, Inc. v. Dickinson, 286 So.2d 529 (Fla. 1974). The 1971 Legislature may have acted inconsistently in granting specified persons immunity from suit in connection with negligent treatment of Baker Act patients and simultaneously withholding immunity for negligent treatment of patients under the Comprehensive Alcoholism Prevention, Control and Treatment Act, ch. 71-132, Fla.Laws; § 396.1515, F.S. 1971. But the existence of such a legislative inconsistency and its redress in the next session does not authorize the court to ignore the earlier legislation and give retroactive effect to the harmonizing act. The immunity from tort suit contemplated by the 1971 Act was in full effect until it was withdrawn in 1973.
We find no purpose in the 1971 Act, however, to grant anyone immunity for negligent or otherwise actionable conduct as it affects persons other than the patient, his family and any others who may claim by and through the patient. In our view, the Act has no application to the claims of strangers to the relationship of patient, hospital and doctor who may suffer injury as a result of negligent conduct arising out of that relationship.
We should be slow to give the Act a construction which would deprive Tarralene Burroughs, Dottie Harmon and others in like position of historic rights and remedies which they surely had prior to the enactment of ch. 71-131. Their right to seek redress for injuries done them by the negligent conduct of another is derived from the common law, but it is secured by Florida's Declaration of Rights. Art. I, § 21, Fla. Const. It may be said that Florida's mental patients and their families were extended substantial benefits by ch. 71-131 "in exchange for" the deprivation of certain common law rights of action, but the Act conferred no such similar benefit on strangers to those directly affected. Cf. Lasky v. State Farm Ins. Co., 296 So.2d 9, 13-15 (Fla. 1974); Kluger v. White, 281 So.2d 1 (Fla. 1973).
Neither the title nor the text of the legislation indicates a purpose to abolish rights of action which would otherwise be enjoyed by strangers to the patient and his treatment. The Act is a bill of rights for mental patients. Its statement of legislative intent asserts a purpose "that individual dignity and human rights be guaranteed to all persons admitted to mental health facilities." Ch. 71-131, § 2, Fla.Laws. The title to subsection (12) is "LIABILITY FOR VIOLATIONS" and its first sentence addresses a legislative concern for the violation or abuse of "any rights or privileges of patients provided by this act." Only by strained construction can an Act so intended and a subsection so entitled be found to immunize those whose negligence impairs rights unprotected and unaffected by the Act, such as those of plaintiffs. The case might be different if defendants' complained of conduct had been done "in compliance with the provisions of this part," but the negligence here alleged is wholly unrelated to the benefits reposed on the patient by the Act. Put another way, the Act created an immunity to "LIABILITY FOR VIOLATIONS" committed in good faith, but plaintiffs here assert no liability for violations of the Act.
We conclude, therefore, that the 1971 Act extended no immunity to the defendant trustees or Dr. Wagemaker on account of the matters alleged in the amended complaints, that the 1973 amendment was unnecessary to restore common law and constitutionally-protected rights to plaintiffs Burroughs and Harmon and that the summary judgments were erroneously entered.
REVERSED.
RAWLS, Acting C.J., and McCORD, J., concur.